**IT IS ORDERED as set forth below:**



**Date: November 17, 2022**

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-64620-WLH |
| WESLEY KENNEDY, JR., | CHAPTER 13 |
| Debtor, | |
| WESLEY KENNEDY, JR., | ADVERSARY PROCEEDING |
| Plaintiff, | NO. 20-6167-WLH |
| v. | |
| NAJARIAN CAPITAL, LLC ASPEN, LLC, ANCHOR ASSETS XIV, LLC, | |
| Defendants. | |

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

1

**THIS MATTER** is before the Court on motions for summary judgment filed by all three Defendants.

Plaintiff Wesley Kennedy, Jr. ("Debtor") filed this adversary proceeding seeking damages and a preliminary injunction related to a foreclosure of real property which allegedly violated the stay. Najarian Capital LLC ("Najarian"), Anchor Assets XIV, LLC ("Anchor"), and Aspen LLC ("Aspen") filed Motions for Summary Judgment (Docs. Nos. 65 & 66) (the "Motions"). They contend the automatic stay was not violated because Debtor was not the record title holder of the property at issue at the time of the foreclosure and the foreclosure sale did not affect property of the bankruptcy estate. Debtor responded in opposition to both Motions (Docs. Nos. 70 & 71), contending he had valid title to the Property because a quitclaim deed purporting to transfer the Property was a forgery and a corrective quitclaim deed purporting to transfer the Property was procured by fraud. Najarian, Anchor, and Aspen filed replies in support of their motions (Docs. Nos. 78 & 79). The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and this is a core proceeding pursuant to 28 U.S.C. §157(A), (G), and (O).

I.      **Undisputed Facts**

Debtor was an iron worker in New York. In 2015, he received a $3.6 million settlement relating to a personal injury claim. At some point in 2015, Debtor met Brenda Ragland ("Ragland"). On July 6, 2015, Debtor signed a power of attorney authorizing Ragland to buy the property at 4563 Carissa Court, Ellenwood, Georgia (the "Property") on his behalf. On July 7, 2015, a warranty deed was executed for the purchase of the Property showing Debtor and Ragland as the purchasers and holding title as joint tenants with right of survivorship. The warranty deed was recorded in DeKalb County on July 14, 2015. The power of attorney did not authorize Ragland

to take title to the Property in her name, and Debtor contends he did not authorize Ragland to put her name on the deed.

On July 24, 2015, a quitclaim deed purportedly transferring the Property from Debtor and Ragland as grantors to Sugarmama Breakfast 2GoGoGo, LLC ("Sugarmama") as grantee was executed for $1.00 in consideration (the "Quitclaim Deed"). Debtor contends he did not sign the document and his signature was forged on the Quitclaim Deed. The Quitclaim Deed was recorded in DeKalb County on September 11, 2015.

Sugarmama then purported to transfer the Property to Ragland's daughter (Quashaunda Kitchens ("Kitchens")) by a quitclaim deed recorded on August 29, 2016 in DeKalb County. The deed was signed by Elaine Chavo, the name which Ragland was allegedly using at the time.

On November 2, 2016, a "Corrective Quitclaim Deed" was signed by Debtor and Ragland, "N/K/A Elaine Chavo", as grantors and Sugarmama as grantee (the "Corrective Quitclaim Deed"). Debtor contends he was fraudulently induced into signing the Corrective Quitclaim Deed, but he does not dispute that he signed the document. The Corrective Quitclaim Deed states the grantors "remise, convey, and forever quitclaim unto the said Grantee" the Property. The Corrective Quitclaim Deed states further its purpose is to "correct the lot number in the legal description" which was "inadvertently shown as Lot 121 on past conveyances." The "past conveyances" were not identified. The Corrective Quitclaim Deed was recorded in DeKalb County on November 8, 2016.

In the meantime, Kitchens purported to transfer the Property to Consumer-Oriented Planning Services, Inc. ("COPS") by quitclaim deed dated November 2, 2016, which was recorded in DeKalb County on November 8, 2016. On November 4, 2016, COPS signed a deed to secure

3

debt to Aspen to secure a loan for $170,000, which was recorded in DeKalb County on November 8, 2016.

At all times during these transfers, Debtor lived in the Property. He contends he was unaware of the transfers at the time they were made, but at some later point he learned about them. On January 31, 2018, Debtor filed a complaint against Chavo, Sugarmama, Kitchens, COPS, and Aspen in DeKalb County, Case Number 18-cv-1767 (the "First Complaint"). On February 8, 2018, a *lis pendens* was filed in DeKalb County regarding the complaint and identifying the Property. Debtor dismissed the First Complaint on February 2, 2019.

On March 29, 2019, Debtor filed a second complaint in DeKalb County against the same defendants, Case Number 19-CV-3864 (the "Second Complaint"). Aspen filed a motion to dismiss the Second Complaint. The motion was unopposed and the case was dismissed on August 19, 2019. The dismissal order stated that all claims against Aspen were dismissed with prejudice and that Aspen holds a first-priority security deed, and it canceled any Notice of *Lis Pendens*.

Aspen prepared to foreclose on the Property, and sent Debtor a notice of foreclosure sale scheduled for October 1, 2019. On September 13, 2019, Debtor filed a petition for Chapter 13 bankruptcy relief, Case Number 19-64620 ("First Bankruptcy Case"). He listed Aspen on the creditor matrix. Notice of the Debtor's bankruptcy was sent to Aspen (Doc. No. 6, entered on September 18, 2019). On September 30, 2019, Debtor's counsel, Mr. Holiday, faxed notice of the bankruptcy filing to Weisman PC, the law firm that represented Aspen in the litigation relating to the First Complaint and Second Complaint.

On October 1, 2019, Aspen foreclosed on the Property. The deed under power to Aspen was recorded and reflects a purchase price of $188,250. On November 6, 2019, Aspen sold the

4

Property to Najarian. Najarian thereafter signed a deed to secure debt to Anchor. Najarian sent notice to Debtor on November 8, 2019 stating it intended to take the Property and change the locks.

On December 19, 2019, Debtor's First Bankruptcy Case was dismissed. On December 23, 2019, Najarian initiated dispossessory proceedings against Debtor in state court. Debtor's First Bankruptcy Case was reinstated on December 30, 2019, and the dispossessory proceedings were placed on hold. The First Bankruptcy Case was subsequently dismissed on April 16, 2020.

On May 4, 2020, Debtor filed a second Chapter 13 bankruptcy case, Case Number 20-66088 ("Second Bankruptcy Case"). The Second Bankruptcy Case was dismissed on August 12, 2020.

This Complaint was filed on February 9, 2021 in Debtor's First Bankruptcy Case. The Court previously entered an order on April 13, 2021 denying Najarian's Motion to Dismiss or Abstain. After discovery, the Motions were filed.

II. **Law**

a. **Summary Judgment Standard**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9

F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

### b. Automatic Stay

Debtor argues Defendants violated the automatic stay. When a bankruptcy petition is filed, an automatic stay immediately becomes effective and operates as a self-executing injunction against a variety of acts against the debtor and property of the estate. 11 U.S.C. § 362. Specifically, the filing of the bankruptcy case operates as a stay of

> (1) the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other actual proceeding against the debtor that was or could have been commenced before the commencement of the case under this title; . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate[.]

11 U.S.C. § 362(a). The language in Section 362 is very broad and is in the disjunctive, meaning that any of the provisions may apply to a particular act by a creditor or a third party. In the Eleventh Circuit, transactions in violation of the automatic stay are void. See Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982).

The weight of authority holds that "a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay." In re 48th St. Steakhouse, Inc., 835 F.2d 427, 430 (2d Cir. 1987); see also In re Convenient Food Mart No. 144, Inc., 968 F.2d 592, 594 (6th Cir. 1992); In re Atl. Bus. & Cmty. Corp., 901 F.2d 325, 328 (3d

Cir. 1990); In re Blaylock, 301 B.R. 443, 445 (Bankr. E.D. Pa. 2003). Section 362(a)(3) prohibits a party from taking "any act to obtain possession . . . of property from the estate or to exercise control over property of the estate." See In re Kennedy, 39 B.R. 995, 997 (C.D. Cal. 1984) (mere possessory interest triggered the automatic stay and any actions with respect to the property at issue would constitute actions to take property from the estate). Moore v. Complete Cash Holdings, LLC (In re Moore), 448 B.R. 93, 102-03 (Bankr. N.D. Ga. 2011); see also In re Holyfield, 2019 WL 2387045, at *3 (Bankr. N.D. Ga. June 3, 2019). The automatic stay thus protects the estate's possession of property even if it is not property of the estate, and it prevents a party from seeking possession even if the debtor has no legal basis for possession. Moore, 448 B.R. at 102-03.

c. **Property of the Estate**

In addition to a possessory interest, Debtor argues he has a legal and equitable interest in the Property which is property of the estate protected by the automatic stay. Property of the estate is defined in section 541 to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The section is interpreted broadly. United States v. Whiting Pools, Inc., 462 U.S. 198, 204–205 (1983). It extends to property "wherever located and by whomever held", and includes the Debtor's legal, equitable and possessory interests. Matter of Cont'l Airlines, Inc., 134 B.R. 536, 541 (Bankr. D. Del. 1991). Although "property of the estate" is defined under 11 U.S.C. § 541, state law generally determines the nature of a debtor's interest in property. See Butner v. United States, 440 U.S. 48, 55 (1979). Thus, the Court must look to state law to determine the nature of Debtor's interest in the Property.

d. **Willful Violation**

Debtor alleges the Defendants "willfully" violated the stay for which he is entitled to a remedy. The Bankruptcy Code establishes a mechanism both to provide compensation for the

7

offense and to punish the offender if the stay is willfully violated. Section 362(k) of the Bankruptcy Code provides as follows:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

In the Eleventh Circuit, a "willful violation" of the automatic stay occurs when the creditor "(1) [k]new the automatic stay was invoked and (2) intended the actions which violated the stay." Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1555 (11th Cir. 1996). The Debtor has to prove a willful stay violation by a preponderance of the evidence. Spinner v. Cash In A Hurry, LLC (In re Spinner), 398 B.R. 84, 94-95 (Bankr. N.D. Ga. 2008). However, the Debtor need only prove that the creditor knew of the stay and intended the action, not that the creditor intended that the action would violate the stay. Jove, 92 F.3d at 1555 (citing Price v. U.S., 42 F.3d 1068,1071 (7th Cir. 1994)). As explained by the court in In re Roche:

> [P]roof of the defendant's intent to violate the stay is not required, only the defendant's intent to act must be shown. This intent to act can be shown where the defendant, after notice, fails to affirmatively halt actions that will violate the stay. A willful violation of the automatic stay may be found if the creditor knew of the automatic stay and its actions were intentional.

Roche v. Pep Boys, Inc. (In re Roche), 361 B.R. 615, 622-23 (Bankr. N.D. Ga. 2005) (internal citations omitted).

### III.   Analysis

#### a. Possessory Interest

The first question raised by the parties is the extent of Debtor's interest in the Property as of the commencement of the First Bankruptcy Case. Debtor was no doubt in possession of the Property, and his possessory interest was protected by the automatic stay. Debtor alleges Najarian

8

violated the stay by sending him a letter on November 8, 2019 notifying him it was changing the locks and Debtor must vacate the Property. Such an act can be a stay violation. Najarian has not addressed this issue in its Motion for Summary Judgment, however, so the Court does not grant summary judgment as to Debtor's claim Najarian willfully violated the stay by seeking to remove Debtor from possession. Debtor does not allege that Aspen or Anchor took any actions with respect to his possessory interest other than Aspen foreclosing. However, a foreclosure of property in which Debtor holds only a possessory interest is not a stay violation in and of itself. Taylor v. Wells Fargo Bank, N.A. (In re Taylor), 2018 WL 1267998, at *5 (Bankr. N.D. Ga. Mar. 8, 2018).

### b. Legal or Equitable Interest

The focus of the Motions is on the Debtor's legal or equitable rights to the Property. Defendants argue that by virtue of the property transfers outlined above, Debtor held no legal or equitable interest in the Property and Aspen's foreclosure of the Property did not violate the stay. Debtor argues he has a protected interest in the Property by virtue of alleged forgery and fraud.

The warranty deed under which Debtor took title to the Property included Ragland as joint tenant. Debtor does not dispute he signed a power of attorney giving her authority to purchase the Property for him, but he contends he did not authorize Ragland to put her name on the deed. The power of attorney did not specifically authorize her to purchase the Property in her name. Flake v. Fulton Nat. Bank of Atlanta, 146 Ga. App. 40, 42 (1978) (a power of attorney must be strictly construed); see also O.C.G.A. § 10-6-21. If Ragland placed her name on the warranty deed without authority, Debtor may be entitled to avoid her interest. But the Court need not make a final determination of whether Ragland held an interest in the Property that was void or voidable to rule on the Motions. In either event, Debtor held at least a half legal interest in the Property upon the execution of the warranty deed.

i. **Quitclaim Deed**

Debtor contends his signature on the Quitclaim Deed purporting to transfer the Property to Sugarmama is a forgery and the transfer of his interest is therefore void. Defendants do not contest or concede this allegation. The Court will accept the Debtor's allegation for purposes of analysis here, but it does not change the outcome.

A forgery occurs where one person signs the name of another person while holding out that signature to be the actual signature of the other person. Deutsche Bank Nat. Tr. Co. v. JP Morgan Chase Bank, N.A., 307 Ga. App. 307, 313–14 (2010); Barron v. State, 12 Ga. App. 342, 348 (1913) ("[T]o constitute forgery, the writing must purport to be the writing of another party than the person making it.") (citation and punctuation omitted); see also Gilbert v. United States, 370 U.S. 650, 655–658 (1962). It is well established that a forged deed is void at its inception under Georgia law. "[A] forged deed is a nullity and vests no title in a grantee." Brock v. Yale Mortgage Corp., 287 Ga. 849, 852 (2010). Recording a forged deed does not transform it into a document with legal authority to establish a valid property interest. In re Greene Ave. Restoration II Corp., 597 B.R. 202, 210 (Bankr. E.D.N.Y. 2019). As such, even a bona fide purchaser for value without notice of a forgery cannot acquire good title from a grantee in a forged deed, or those holding under such a grantee, because the grantee has no title to convey." Brock, 287 Ga. at 852. In Brock, the Supreme Court of Georgia specifically overruled prior precedent that extended "the bona fide purchaser for value doctrine to those acquiring title under a grantee in a forged deed." Id. at 853 (overruling Bonner v. Norwest Bank Minn., N.A., 275 Ga. 620 (Ga. 2002)); Aurora Loan Servs., LLC v. Veatch, 288 Ga. 808, 809 (2011). Thus, the Georgia Supreme Court has made clear that a bona fide purchaser at a foreclosure sale does not obtain good title to the purchased property in the event

of a forgery in the chain of title. Moises v. Homeward Residential, Inc., 2013 WL 12100761, at *6 (N.D. Ga. May 1, 2013) (emphasis added).

Assuming without deciding that Debtor is correct that his name was forged on the Quitclaim Deed, no title passed from Debtor to Sugarmama. If Ragland obtained no title under the warranty deed, she had no title to pass to Sugarmama. But if Ragland acquired an interest in the Property under the warranty deed, she could transfer her interest, but she could not transfer Debtor's interest without his consent. Brock, 287 Ga. at 851–52. If one joint tenant purports to convey an interest in the entire property, the deed will affect his or her interest although non-consenting cotenants will not be bound. Brock, 287 Ga. at 851 (citing Chastain v. Schomburg, 258 Ga. 218 (1988); Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure with Forms § 7–84 (6th ed.)).

Under these circumstances, where there is no evidence Debtor authorized Ragland to convey the Property, any transfer she made could only be of her half interest in the Property. Once Ragland transferred her interest in the Property to Sugarmama, it was owned jointly by Debtor and Sugarmama (or if Ragland never obtained an interest because of the unauthorized grant of title to her, the property was owned 100% by Debtor since Ragland could not convey what she did not own). So, after execution of the Quitclaim Deed (assuming Debtor's signature was forged), Debtor still held a legal interest in the Property.

### ii. Corrective Quitclaim Deed

Defendants argue the Corrective Quitclaim Deed resulted in transfer of the Property. Debtor contends the Corrective Quitclaim Deed was procured by fraud. He states he was lured into meeting Ragland on the premise she was helping him purchase another property in Hampton, Georgia. He states he knew he was signing a deed but thought it was for the Hampton property.

11

He "doesn't remember" not being able to read the document. In essence, Debtor argues that he was fraudulently induced to sign the Corrective Quitclaim Deed.

A fraud is not the same as a forgery. If the signer was aware that he was signing a deed, but was misled as to the deed's purpose, then the deed is not void—it is merely voidable at the election of the injured party. O.C.G.A. § 13–5–5; see Hudson v. Montcalm Publishing Corp., 190 Ga. App. 629, 631 (1989). In that event, a subsequent bona fide purchaser is protected. In re Stallmer, 792 F. App'x 856, 857–58 (2d Cir. 2019); see also Brock, 287 Ga. at 852. Thus, if a deed is obtained by fraudulent inducement, but the injured party does not seek to avoid the deed, the deed is effective and will pass title.

Construing the facts in the light most favorable to Debtor, Debtor did not understand the purpose of signing the Corrective Quitclaim Deed and was fraudulently induced to sign it. Under Georgia law, if the Corrective Quitclaim Deed was obtained through fraud, it was voidable (not void). The Corrective Quitclaim Deed was not avoided. Thus, the Corrective Quitclaim Deed effected a transfer of the Debtor's interest in the Property and the Debtor no longer held any interest in the Property upon its execution.

Debtor argues the Corrective Quitclaim Deed did not transfer an interest in the Property but only corrected a lot number. The Corrective Quitclaim Deed did correct the lot number but as to "past conveyances" which were not identified. Moreover, the Corrective Quitclaim Deed conveyed Debtor's interest in the Property—it said Debtor "does hereby remise, convey and forever QUITCLAIM unto the Grantee" the Property. The Corrective Quitclaim Deed was not an amendment to the Quitclaim Deed; it was a conveyance of the Property in its own right.

Defendants contend the Corrective Quitclaim Deed ratified the prior Quitclaim Deed. Under Georgia law, a forged signature is nonetheless binding if ratified by the person whose name

12

was signed. Brock, 287 Ga. at 854 (citing Ferguson v. Golf Course Consultants, 243 Ga. 112, 113 (1979); Rains v. Dolphin Mtg. Corp., 241 Ga. App. 611, 614 (1999)). Ratification is "the confirmation by one of an act performed by another without authority[.]" U. S. Bank Tr. Nat'l Ass'n v. Chieftain Atlanta, L. P., 361 Ga. App. 186, 188 (2021). "The ratification must be made by the principal with knowledge of the material facts and 'may be express or implied from the acts or silence of the principal.'" Hendrix v. First Bank of Savannah, 195 Ga. App. 510, 511 (1990) (quoting O.C.G.A. § 10–6–52). Thus, "[i]f the principal, with full knowledge of all the material facts, *accepts and retains the benefits of the unauthorized act*, he thereby ratifies the act." U. S. Bank Tr. Nat'l Ass'n v. Chieftain Atlanta, L. P., 361 Ga. App. 186, 189 (2021) (emphasis in original). Debtor did not manifest assent to be bound by the prior Quitclaim Deed and disputes he knew all the facts and contends he did not get any benefit out of the transaction. Accordingly, the Court cannot find as a matter of law that Debtor ratified the Quitclaim Deed.

Once the Corrective Quitclaim Deed was signed, the Property was owned by Sugarmama. Debtor had a potential claim against others for fraud and/or fraudulent inducement, but he did not retain an interest in the Property itself. He had a potential claim to avoid the Corrective Quitclaim Deed, but that claim did not make the Property property of the estate. See In re Walker, 171 B.R. 197 (Bankr. E.D. Pa. 1994); see also In re Colonial Realty Co., 980 F.2d 125 (2d Cir. 1992) (property held by third-party transferees only becomes property of the estate *after* the transfer has been avoided); In re Stillwater Asset Backed Offshore Fund Ltd., 565 B.R. 42, 49 (S.D.N.Y. 2017), aff'd, 729 F. App'x 69 (2d Cir. 2018) (fraudulently transferred property "is not to be considered property of the estate until it is recovered."); In re Lehman Bros. Holdings Inc., 480 B.R. 179, 192 (S.D.N.Y. 2012) ("it is well settled that property transferred by the debtor is not 'property of the estate' until the debtor succeeds in compelling the property's return"); In re Saunders, 101 B.R.

13

303, 305 (Bankr. N.D. Fla. 1989) (until a judicial determination has been made that the property was, in fact, fraudulently transferred, it is not property of the estate). When Debtor filed bankruptcy, his claim against the parties became property of the estate, but not the Property.

### c. Effect of State Court Litigation

Debtor filed two lawsuits in state court naming Aspen as a defendant. Aspen was a proper target since it held the security deed on the Property. In the second lawsuit, Aspen filed a motion to dismiss.[1] Debtor did not respond to Aspen's motion to dismiss and, accordingly, the state court granted the unopposed motion to dismiss. Defendants rely on the dismissal order to argue in their Motions that Debtor's claims have been determined.

The doctrine of collateral estoppel seeks to prevent the re-litigation of issues previously contested and determined by a valid and final judgment in another court. In re Lowery, 440 B.R. 914, 921 (Bankr. N.D. Ga. 2010). Under Georgia law, a party may only assert the doctrine of collateral estoppel when the following elements have been satisfied: (1) identity of the parties is the same; (2) identity of the issues is the same; (3) actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action; and (5) the parties had a full and fair opportunity to litigate the issues in question. Lowery, 440 B.R. at 921 (citing Lemmons, 2005 WL 6487216 (Bankr. N.D. Ga. Dec. 20, 2005)).

There is no real dispute that the parties and the issues are the same in this adversary proceeding and in the Second Complaint. But the evidence does not support that the order of dismissal was final as of the petition date even if all the other criteria for collateral estoppel are

---

[1] Aspen argued that it had good title to the Property since it was a bona fide purchaser. Aspen relied on Bonner v. Norwest Bank, 275 Ga. 620 (2002), for the proposition that a bona fide purchaser can take good title to property even if a forged deed is in the chain of title. But, as explained above, the Georgia Supreme Court in Brock specifically overturned Bonner and made clear that even a bona fide purchaser for value without notice of a forgery cannot acquire good title from a grantee in a forged deed. 287 Ga. at 852. Aspen did not cite the appropriate law to the state court.

14

satisfied. Under Georgia law, "the judgment is not final as long as there is a right to appellate review." Id. (citing Reid v. Reid, 201 Ga. App. 530, 533 (1991)). In Georgia, "[a]ppeals to the superior court shall be filed within 30 days of the date the judgment, order, or decision complained of was entered." Ga. Code Ann. § 5-3-20. Here, the order was not final when the bankruptcy case was filed. The order was entered on August 19, 2019 and the petition was filed on September 13, 2019, before the 30-day appeal period ran. Under the Bankruptcy Code, if a deadline has not expired as of the filing of the petition, a debtor is given additional time under section 108(b) within which to commence or file certain matters, including the filing of a notice of appeal. Id.; see also Autoskill Inc. v. National Educational Support Systems, Inc., 994 F.2d 1476, 1483 n.3 and 1484 (10th Cir.1993).[2] Since the appeals period had not expired as of the petition date, section 108(b)(2) afforded the debtor additional time to appeal. In re Potter, No. 06-1138 M, 2007 WL 1672181, at *6 (Bankr. D.N.M. June 6, 2007). The foreclosure ultimately occurred before the appeal period expired.

Further, a judgment as to less than all the claims or all the parties in a case is not final. See Wise v. Georgia State Bd. for Examination, Qualification & Registration of Architects, 244 Ga. 449, 449 (1979) (citing Walker v. Robinson, 232 Ga. 361 (1974)). Thus dismissal of fewer than all counts, even if it disposes of all counts against a particular defendant, is not "final" for purposes of appeal. State v. Green, 331 Ga. App. 107, 111 (2015). The court may nevertheless direct the

---

[2] Section 108(b) provides, in relevant part:

> if applicable nonbankruptcy law . . . fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 60 days after the order of relief.

11 U.S.C. § 108(b).

entry of a final judgment as to one or more, but fewer than all, of the claims or parties pursuant to O.C.G.A. § 9-11-54(b).

Here, the dismissal was only as to Aspen, so all the claims were not resolved in the Second Complaint. The evidence does not include any certification that the dismissal order was final pursuant to O.C.G.A. § 9-11-54 or an express finding that final judgment should be entered because there is no just reason for delay. Accordingly, the evidence does not establish that the dismissal order is final and it provides no basis for application of collateral estoppel. In re Dowd, 616 B.R. 212, 224 (Bankr. N.D. Ga. 2020).

**IV.     Conclusion**

The Court finds there is no genuine issue of material fact that Debtor had no legal or equitable interest in the Property when the First Bankruptcy Case was filed. Because the Property was not property of the bankruptcy estate as of the petition date, the automatic stay did not prevent a foreclosure of the Property, and the foreclosure was not a stay violation. The Debtor held a possessory interest in the Property which was protected by the stay, but the foreclosure did not affect it. See Walker, 171 B.R. at 208. Moreover, Debtor's claims for fraud, forgery, or other causes of action became property of the estate, but were not affected by the foreclosure.

The Court notes this order addresses the limited issue of whether a stay violation occurred by virtue of a foreclosure sale on October 1, 2019. It does not determine many of the issues the parties would like to raise, such as whether Ragland took an interest under the warranty deed, the Debtor's signature on the Quitclaim Deed was a forgery, Debtor was defrauded into signing the Corrective Quitclaim Deed, anyone is a bona fide purchaser, transfers by persons other than Debtor were valid, or subsequent actions in state court created a final order. The Court need not reach those issues here. The issues of whether Najarian violated the stay by sending Debtor a

16

dispossessory letter post-petition and whether Najarian had notice of the bankruptcy case are reserved for later determination.

Accordingly,

**IT IS ORDERED** that the Motions are **GRANTED** as to all Defendants on Debtor's claim that foreclosure of the Property violated the automatic stay. The foreclosure of the Property did not violate the automatic stay.

**IT IS FURTHER ORDERED** that judgment is entered for Aspen and Anchor on all counts of the Complaint.

**IT IS FURTHER ORDERED** that Najarian's Motion is **DENIED** as to Debtor's claim for willful violation of the automatic stay as to its actions to remove Debtor from possession.

### END OF ORDER

**Distribution List**

Wesley Kennedy, Jr.
4563 Carissa Court
Ellenwood, GA 30294

Donell Holiday
P. O. Box 4596
Atlanta, GA 30302

Aaron P.M. Tady
Coles Barton LLP
Suite 100
150 South Perry Street
Lawrenceville, GA 30046

Leon Jones
Jones & Walden LLC
699 Piedmont Avenue, NE
Atlanta, GA 30308