**IT IS ORDERED as set forth below:**



**Date: April 19, 2023**

_Wendy L. Hagenau_
_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-64620-WLH |
| WESLEY KENNEDY, JR., | CHAPTER 13 |
| Debtor, | |
| WESLEY KENNEDY, JR., | ADVERSARY PROCEEDING |
| Plaintiff, | NO. 20-6167-WLH |
| v. | |
| NAJARIAN CAPITAL, LLC<br>ASPEN, LLC,<br>RESIDENTIAL INVESTMENT TRUST IV, | |
| Defendants. | |

### SUPPLEMENTAL ORDER AFTER TRIAL

1

**THIS MATTER** is before the Court after a trial held on March 28, 2023 on the Debtor's complaint that Najarian Capital, LLC ("Najarian") violated the automatic stay by interfering with Debtor's possessory interest in the Property after Debtor filed bankruptcy. On March 28, 2023, the Court entered an order finding, for the reasons stated on the record, Najarian willfully violated the automatic stay of 11 U.S.C. § 362 when it caused a dispossessory complaint to be served on Debtor on January 2, 2020 (Doc. No. 97). The Court entered a separate judgment in favor of Debtor and against Najarian for actual damages of attorney's fees in the total amount of $13,000.00 (Doc. No. 98). The Court reserved the right to supplement its order, and does so here.

FACTS

The facts are laid out in the Court's Order on Defendants' Motions for Summary Judgment (Doc. No. 81) (the "SJ Order"), and incorporated herein. The facts relevant to this claim relate to Debtor's possession (not ownership) of property at 4563 Carissa Court, Ellenwood, Georgia (the "Property").

Aspen, LLC held a security deed on the Property and sent Debtor a notice of foreclosure sale scheduled for October 1, 2019. On September 13, 2019, Debtor filed a petition for Chapter 13 bankruptcy relief, Case Number 19-64620 ("First Bankruptcy Case"). He listed Aspen on the creditor matrix, and notice of the Debtor's bankruptcy was provided to Aspen (Doc. No. 6, entered on September 18, 2019). Nevertheless, on October 1, 2019, Aspen foreclosed on the Property. The Court held in the SJ Order that the foreclosure did not violate the stay because Debtor had no ownership interest in the Property. On November 6, 2019, Aspen sold the Property to Najarian.

The facts at trial established that on November 7, 2019, Demetrix Johnson visited the Property on behalf of Najarian to deliver a notice stating Najarian intended to take the Property and change the locks. He spoke with Debtor while at the Property. At 9:51 a.m. the following day,

2

November 8, 2019, Debtor's wife (Dr. Angela Harris) sent an email to Oksana Sepich, an employee of Najarian who had signed the dispossessory letter with the title "Legal Manager," that the Property was "under a Chapter 13." She also called Ms. Sepich that day and spoke with her regarding the First Bankruptcy Case. Dr. Harris sent a letter to Mr. Holiday (Debtor's counsel) regarding the visit from Mr. Johnson and notice from Najarian, and he also sent a letter to Ms. Sepich regarding the pending bankruptcy case.

On November 17 or 18, 2019, people appeared at the Property stating they were conducting an appraisal of the Property. Dr. Harris did not review their identification. Najarian denies sending anyone and has no record of any visits on these dates. Following the visit, Dr. Harris called Ms. Sepich and left a voicemail regarding the incident; she later called again and spoke with Ms. Sepich.

On December 19, 2019, the Chapter 13 Trustee filed a supplemental report requesting dismissal of the First Bankruptcy Case for failure to make plan payments (Case No. 19-64620 Doc. No. 19). The First Bankruptcy Case was dismissed that same day on December 19, 2019 (Case No. 19-64620 Doc. No. 20).

On December 23, 2019, Najarian filed a dispossessory proceeding in the Magistrate Court of DeKalb County with Ms. Sepich as the affiant. Dr. Harris learned about the dispossessory proceeding through a reporting service. Dr. Harris contacted Debtor's bankruptcy counsel, Mr. Holiday. She also called Ms. Sepich and told her that although the bankruptcy case had been dismissed, she believed the bankruptcy case would be promptly reinstated because the Chapter 13 plan payments had been made.

On December 27, 2019, the Chapter 13 Trustee filed a Motion to Reconsider Order of Dismissal (Case No. 19-64620 Doc. No. 22) stating Debtor had initiated a payment to the Chapter

3

13 Trustee before the supplemental report had been filed and, accordingly, the Chapter 13 Trustee

was amenable to reconsideration of the order of dismissal. The Court granted the Motion to

Reconsider and reinstated the case on December 30, 2019 (Case No. 19-64620 Doc. No. 23). On

December 30, 2019, Dr. Harris called Ms. Sepich and reported to her directly that the First

Bankruptcy Case had been reinstated.

Meanwhile, Najarian moved forward with the dispossessory proceeding. On Thursday,

January 2, 2020, at 3:26 p.m., a process server served a copy of the dispossessory complaint on

the Debtor.

On January 7, 2020, Debtor filed an answer and notice of bankruptcy in the dispossessory

case. On January 13, 2020, an order staying further proceedings was entered in the dispossessory

case. The First Bankruptcy Case was dismissed on April 16, 2020 (Case No. 19-64620 Doc. No.

32). On April 21, 2020, Najarian filed a motion to reinstate the dispossessory proceeding.

Debtor filed the complaint on February 9, 2021, seeking damages and a preliminary

injunction related to the foreclosure of the Property and Najarian's dispossessory which allegedly

violated the stay in Debtor's First Bankruptcy Case. The Court previously entered an order on

April 13, 2021 denying Najarian's Motion to Dismiss or Abstain. After discovery, Defendants

filed Motions for Summary Judgment (Docs. Nos. 65 & 66). On November 17,  2022, the Court

issued the SJ Order. The Court found there was no genuine issue of material fact Debtor had no

legal or equitable interest in the Property when the First Bankruptcy Case was filed, the automatic

stay did not prevent a foreclosure of the Property, and the foreclosure was not a stay violation. The

Debtor held a possessory interest in the Property, which was protected by the stay, but the

foreclosure did not affect it. The SJ Order concluded issues of fact remained as to whether Najarian

violated the stay by sending Debtor a dispossessory letter post-petition and whether Najarian had

4

notice of the bankruptcy case. A Motion to Certify Judgment as Final (Doc. No. 87) was filed, which the Court granted (Doc. No. 93).

The Court scheduled a trial for March 28, 2023 on the question of whether Najarian violated the automatic stay (Doc. No. 94). The parties proceeded on the sole question of whether Najarian violated the stay during the First Bankruptcy Case. After considering the testimony of Dr. Harris, Robert Kyle Dudley, Demetrix Johnson, and the Debtor, the Court issued its oral ruling and entered the Order After Trial (Doc. No. 97), which it now supplements.

JURISDICTION

As a preliminary matter, the Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (G), and (O). The Court's Order on Motion to Dismiss (Doc. No. 13), addressed its jurisdiction and is incorporated herein.

LEGAL PRINCIPLES

The Court previously ruled in the SJ Order that Debtor did not own the Property and did not hold an ownership interest in the Property when he filed bankruptcy. The remaining question is a narrow one: did Najarian violate the automatic stay with its actions? The answer requires review of several legal principles.

**Automatic Stay**

When a debtor files for bankruptcy, an automatic stay arises pursuant to 11 U.S.C. §362(a). The automatic stay immediately becomes effective and operates as a self-executing injunction against a variety of acts against the debtor and property of the estate. 11 U.S.C. § 362. This protection afforded to debtors is "one of the fundamental debtor protections provided by bankruptcy laws." Sciortino v. Gwinnett Cnty. Dep't of Water Res., 561 B.R. 569, 578, (Bankr. N.D. Ga. 2016) (quotation marks and citation omitted). The stay generally prohibits creditors from

engaging in certain "collection actions against the debtor". <u>Justice Cometh, Ltd. v. Lambert</u>, 426

F.3d 1342, 1343 (11th Cir. 2005) (per curiam). Specifically, the filing of the bankruptcy case

operates as a stay of

> (1) the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other actual proceeding against the debtor that was or could have been commenced before the commencement of the case under this title; . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate[.]

11 U.S.C. § 362(a). The language in Section 362 is very broad and is in the disjunctive, meaning

that any of the provisions may apply to a particular act by a creditor or a third party.

"The stay specifically bars any effort to commence or continue any judicial action against

the debtor that could have been commenced before the bankruptcy was filed, including issuing

service of process." <u>In re Bilfield</u>, 494 B.R. 292, 301 (Bankr. N.D. Ohio 2013) (citing 11 U.S.C.

§ 362(a)(1)). The stay does not, however, bar all activity relating to property in which a debtor has

an interest. For example, property inspections in and of themselves do not violate the stay. Instead,

a stay violation occurs only if the inspections are conducted to harass the debtor or coerce him into

paying the mortgage debt." <u>In re Nyamusevya</u>, 644 B.R. 375, 384 (Bankr. S.D. Ohio 2022); <u>see</u>

<u>also</u> <u>Rodriguez v. Wells Fargo Bank, N.A. (In re Rodriguez)</u>, 2015 WL 403968, at *6 (E.D. Va.

Jan. 29, 2015) (property inspection during which the creditor's agent spoke to the debtor only to

determine whether she still lived at the property did not violate the automatic stay). In the Eleventh

Circuit, transactions in violation of the automatic stay are void. <u>See</u> <u>Borg-Warner Acceptance</u>

<u>Corp. v. Hall</u>, 685 F.2d 1306, 1308 (11th Cir. 1982).

The weight of authority holds that "a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay." In re 48th St. Steakhouse, Inc., 835 F.2d 427, 430 (2d Cir. 1987); see also In re Convenient Food Mart No. 144, Inc., 968 F.2d 592, 594 (6th Cir. 1992); In re Atl. Bus. & Cmty. Corp., 901 F.2d 325, 328 (3d Cir. 1990); In re Blaylock, 301 B.R. 443, 445 (Bankr. E.D. Pa. 2003). Section 362(a)(3) prohibits a party from taking "any act to obtain possession . . . of property from the estate or to exercise control over property of the estate." See In re Kennedy, 39 B.R. 995, 997 (C.D. Cal. 1984) (mere possessory interest triggered the automatic stay and any actions with respect to the property at issue would constitute actions to take property from the estate). Moore v. Complete Cash Holdings, LLC (In re Moore), 448 B.R. 93, 102-03 (Bankr. N.D. Ga. 2011); see also In re Holyfield, 2019 WL 2387045, at *3 (Bankr. N.D. Ga. June 3, 2019). The automatic stay thus protects the estate's possession of property even if it is not property of the estate, and it prevents a party from seeking possession even if the debtor has no legal basis for possession. Moore, 448 B.R. at 102-03.

### **Willful Violation**

Debtor alleges Najarian "willfully" violated the stay for which he is entitled to a remedy. The Bankruptcy Code establishes a mechanism both to provide compensation for the offense and to punish the offender if the stay is willfully violated. Section 362(k) of the Bankruptcy Code provides as follows:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). Not every violation of stay gives rise to a claim under section 362(k)— only "willful" violations are actionable under this section and remediable by an award of damages.

7

In the Eleventh Circuit, a "willful violation" of the automatic stay occurs when the creditor "(1) [k]new the automatic stay was invoked and (2) intended the actions which violated the stay." Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1555 (11th Cir. 1996). The Debtor has to prove a willful stay violation by a preponderance of the evidence. Spinner v. Cash In A Hurry, LLC (In re Spinner), 398 B.R. 84, 94-95 (Bankr. N.D. Ga. 2008). However, the Debtor need only prove that the creditor knew of the stay and intended the action, not that the creditor intended that the action would violate the stay. Jove, 92 F.3d at 1555 (citing Price v. U.S., 42 F.3d 1068,1071 (7th Cir. 1994)). As explained by the court in In re Roche:

> [P]roof of the defendant's intent to violate the stay is not required, only the defendant's intent to act must be shown. This intent to act can be shown where the defendant, after notice, fails to affirmatively halt actions that will violate the stay. A willful violation of the automatic stay may be found if the creditor knew of the automatic stay and its actions were intentional.

Roche v. Pep Boys, Inc. (In re Roche), 361 B.R. 615, 622-23 (Bankr. N.D. Ga. 2005) (internal citations omitted). "A good faith belief by the defendant that it had the right to take such actions is irrelevant to whether a defendant acted willfully." Holyfield, 2019 WL 2387045, at *5; Allied Holdings, 355 B.R. at 378 (fact that the party did not intend to violate the automatic stay and acted without malice does not preclude a finding of contempt and an assessment of appropriate sanctions).

### Notice

The automatic stay takes effect upon filing of the bankruptcy petition. A creditor is not subject to the Code's provisions pertaining to the automatic stay until notice of the bankruptcy filing is received. A debtor may notify a creditor of his bankruptcy filing orally or in writing. Once the creditor receives notice, "the creditor is obligated to inquire further before ignoring the verbal notice and proceeding to collect on its debt." In re Henley, 480 B.R. 708, 798 (Bankr. S.D. Tex.

8

2012). The debtor has the burden of providing the creditor with actual notice. "[I]f a creditor violates the automatic stay *without* knowledge of the filing of the bankruptcy, it is merely a *technical* violation," and there are no consequences to the creditor. In re Henley, 480 B.R. 708, 798 (Bankr. S.D. Tex. 2012) (citing In re Coons, 123 B.R. 649, 650 (Bankr. N.D. Okla. 1991)).

Once the creditor receives actual notice, though, the burden shifts to the creditor to prevent violations of the automatic stay. In re Smith, 296 B.R. 46, 55 (Bankr. M.D. Ala. 2003). It is sufficient that the violator had actual knowledge of the bankruptcy case, or "notice of sufficient facts to cause a reasonably prudent person to make additional inquiry to determine whether a bankruptcy petition has been filed." In re WVF Acquisition, LLC, 420 B.R. 902, 910 (Bankr. S.D. Fla. 2009). Once a party and its counsel have knowledge that a bankruptcy petition has been filed, they are deemed to have knowledge that the automatic stay is in place.

ANALYSIS

With these principles in mind, the Court will apply them to Najarian's acts of which Debtor complains: sending a dispossessory letter, conducting site visits and appraisals, and serving the dispossessory complaint.

### **Dispossessory Letter**

There is no dispute that at the time Najarian delivered a notice to vacate the Property on November 7, 2019, it did not have notice of the First Bankruptcy Case. It was not scheduled in Debtor's case, and no evidence was presented that Debtor or his counsel or anyone advised Najarian of the First Bankruptcy Case prior to Dr. Harris's communication on November 8, 2019. Najarian did not know that the automatic stay was invoked when it first visited the Property and, therefore, did not willfully violate the automatic stay.

9

Dr. Harris then communicated with Najarian. She testified she spoke to Ms. Sepich, the person with Najarian identified in the letter, and indicated the Property "was in Chapter 13." At that point, Najarian had actual notice of the First Bankruptcy Case. But since it had no notice before delivery of the dispossessory letter on November 7, 2019, it did not willfully violate the stay.

### Appraisal and Site Visits

An individual next visited the Property on November 17 or 18 to assess the Property and, in Dr. Harris's words, "appraise" the Property. She testified she was told the appraisal was for the "owner." Najarian contends it does not regularly conduct appraisals and did not send anyone to visit the Property on November 17 or 18, 2019. But, regardless of who assessed the Property, assessing real property generally does not constitute a violation of the automatic stay. For example, in Nyamusevya, 644 B.R. at 385, the court concluded the inspections were conducted to ensure the good condition of the property and were not undertaken as part of an effort to collect a debt or to harass or intimidate him into paying a debt. See also Han v. GE Cap. Small Bus. Fin. Corp. (In re Han), 2005 WL 2456933, at *3 (Bankr. N.D. Fla. July 12, 2005) (holding that a creditor's property inspection did not violate the stay where "the Court can find no basis for believing that these actions were taken in an effort to harass or coerce [the debtor], or to collect the debt owed by [the debtor]"); Health Sci. Prods., Inc. v. Taylor (In re Health Sci. Prods., Inc.), 183 B.R. 903, 934 (Bankr. N.D. Ala. 1995) (holding that a property inspection did not violate the automatic stay where it was not done in an "effort to harass or coerce [the debtor], or to collect the debt owed by [the debtor]").

Here, the evidence showed Mr. Johnson visited the Property on November 7, 2019. He spoke with Debtor and Dr. Harris, but no threats were made. He explained the purpose of the visit

10

was to verify if the Property was occupied. He did not force his way into the house, refuse to leave, or threaten the Debtor and his wife. Najarian has no record of sending anyone for an appraisal on November 17 or 18, 2019, and Dr. Harris did not know the identity of the person who was at the Property. But she provided no evidence that the person threatened her or the Debtor. The evidence does not establish that Najarian sent the appraiser or that the appraiser's visit violated the stay. There is no evidence any attempts were made to collect a debt, take possession of the Property, or threaten or intimidate the Debtor and Dr. Harris at that time and, accordingly, the Court finds the mid-November site visit or appraisal did not violate the automatic stay.

### Process Server

On January 2, 2020, Najarian caused a process server to serve the dispossessory complaint on the Debtor. The stay specifically bars issuing service of process. Bilfield, 494 B.R. at 301. At the time the dispossessory complaint was served on the Debtor, the First Bankruptcy Case had been dismissed and reinstated. Najarian contends that it did not know the First Bankruptcy Case had been reinstated given the case was reinstated on December 30, 2019 and was closely followed by a federal holiday (New Years Day on January 1, 2020). It also contends it is not liable for the acts of the process server. Both arguments are unavailing.

While the timing is close, Dr. Harris's uncontested testimony was that she called Ms. Sepich and spoke to her two times on December 30, 2019 to report the First Bankruptcy Case had been reinstated. This followed a call from Dr. Harris on December 23, 2019 (when the dispossessory was filed) informing Ms. Sepich at Najarian that the Debtor believed the case would be reinstated. Ms. Sepich was the "legal manager" at Najarian and the affiant for the dispossessory complaint, so she was an appropriate person to receive notice. The evidence shows Najarian had actual notice of the pending bankruptcy case.

11

Further, Najarian argues it did not really do anything to violate the stay, it simply did not

tell the process server to stop and cannot be held liable for the process server's visit to the Property.

But the principles of agency law are clear that "a creditor-principal is liable under § 362(k) for the

acts of an agent . . . who willfully violates the automatic stay taken when those acts are within the

scope of their principal-agent relationship.'" Bilfield, 494 B.R. at 301 (citing In re Webb, 472 B.R.

665 at n. 4). For example, in Bilfield, the court found a process server's visits to the debtors' home

and dental practice violated the stay where the creditor did not tell the process server that the debtor

had filed a bankruptcy case. The court explained that after the creditor set the subpoena in motion,

it had an affirmative obligation to call it off. While the creditor hinted it was the process server,

not the creditor, who violated the stay, the court disagreed and said the argument "misses the

point." Id. at 305. The creditor hired the process server and the process server was the agent of the

creditor; as such, the creditor was responsible for the acts of its agent. Id.; see also In re Mocella,

552 B.R. 706, 719 (Bankr. N.D. Ohio 2016) ("There is no dispute that Nationstar is liable for all

actions taken by its agent"); Gray v. ZB, N.A. (In re Gray), 567 B.R. 841 (Bankr. W.D. Wash.

2017) (creditor violated the stay by not seeking to quash bench warrants for debtor's arrest). Here,

Najarian acknowledges it hired the process server. Najarian was responsible for the conduct of its

agent, who served the dispossessory complaint on the Debtor in violation of the automatic stay.

Accordingly, the Court finds Najarian willfully violated the automatic stay when it caused the

process server to serve Debtor with the dispossessory proceeding papers on January 2, 2020.

DAMAGES

Having determined Najarian violated the automatic stay when it caused a process server to

serve the dispossessory complaint on Debtor on January 2, 2020, the question for the Court is the

appropriate remedy, if any. The Bankruptcy Code provides the appropriate remedy in section

362(k) which states, "[a]n individual injured by any willful violation of the stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances may recover punitive damages." Holyfield, 2019 WL 2387045, at *4. As the party seeking damages, the Debtor bears the burden of proof on that issue. Id. at *6 (citing Roche, 361 B.R. at 624).

In the complaint, Debtor asked for a return of the Property; to recover rent of $6,000 paid to Najarian during dispossessory proceedings; and for damages including actual damages of $300,000, emotional distress damages of $300,000, attorney's fees of $25,200, and punitive damages of $300,000.

### Actual Damages

Actual damages are defined as "real, substantial and just damages or the amount awarded to a complainant in compensation for [her] actual and real loss or injury, as opposed to nominal damages and punitive damages." Roche, 361 B.R. at 624. (citing McMillian v. FDIC, 81 F.3d 1041, 1054 (11th Cir. 1996)). "Actual damages must be prove[n] with reasonable certainty, and mere speculation, guess or conjecture will not suffice." Castillo v. Three Aces Auto Sales, (In re Castillo), 456 B.R. 719, 725 (Bankr. N.D. Ga. 2011). Where actual damages are de minimis, the court may limit damages to attorney's fees. Erbesfield v. Gavrin (In re Erbesfield), 2016 WL 7388516, at *2 (Bankr. N.D. Ga. Sept. 22, 2016.); Randall v. Doctors and Merchants Credit Bureau Inc. (In re Randall), 1990 WL 10007394 at *2 (Bankr. S.D. Ga. June 21, 1990). Courts have declined to award damages where the debtor fails to identify out-of-pocket costs the debtor was forced to incur by virtue of the stay violations. In re Best, 2018 WL 6060316, at *5 (Bankr. N.D. Ga. Nov. 19, 2018). Courts have also found a debtor is not entitled to a return of rent. See e.g., In

13

re Tavera, 645 B.R. 299, 311 (Bankr. M.D. Fla. 2022) ("Tavera is not entitled to a return of her rent for the Property.").

### Attorney's fees

The Eleventh Circuit includes in stay violation damages fees "necessary to stop an ongoing stay violation, undo the effects of a stay violation, or recover pre-litigation actual damages." In re Erbesfield, No. 14-58377-BEM, 2016 WL 7388516, at *1 (Bankr. N.D. Ga. Sept. 22, 2016) (citing In re Vaughn, 2016 WL 836968, at *3 (Bankr. M.D. Ala. Mar. 3, 2016)). Courts, including this Court, have held a debtor can recover attorney's fees as actual damages if reasonably and necessarily incurred as a result of a willful stay violation. See e.g., Holyfield, 2019 WL 2387045, at *6. These courts recognize that ending a stay violation often requires intervention by legal counsel who should not be expected to perform services without payment. See Mantiply v. Horne (In re Horne), 876 F.3d 1076 (11th Cir. 2017); see e.g., In re Voll, 512 B.R. 132 (Bankr. N.D.N.Y. 2014) (debtors entitled to reasonable attorney's fees despite having failed to show emotional distress); In re Skeen, 248 B.R. 312 (Bankr. E.D. Tenn. 2000) (attorney fees can be recovered if legal action is required.); Singley v. American General Finance (In re Singley), 233 B.R. 170, 174-5 (Bankr. S.D. Ga. 1999).

In determining the appropriate amount of attorney's fees, the Court "must review critically the requested fees to ensure that the court is not 'rewarding an excessively litigious approach' to the prosecution of stay violations." Holyfield, 2019 WL 2387045, at *6. When determining the amount of an award, the Court considers the "reasonableness [of fees] and their relation to addressing the stay violations at issue." Id. (citing In re Thomason), 493 B.R. 890, 902 (Bankr. N.D. Ga. 2013)).

14

Not only must the fees be reasonable, but they should bear a reasonable relationship to the amount in controversy. Holyfield, 2019 WL 2387045, at *6. "When the harm from the stay violation has a de minimis impact on plaintiff, damages under Section 362(k) may be limited to reasonable attorney's fees expended. . . . As a result, attorney's fees must be reasonable as reviewed under the lodestar principles." Id. (citing Erbesfield, 2016 WL 7388516).

### Emotional distress damages

In Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1271 (11th Cir. 2014), the Eleventh Circuit joined other circuits in concluding that emotional distress damages fall within the broad term of "actual damages" in section 362(k). The court cautioned, though, that not every willful violation of the stay merits compensation for emotional distress. At a minimum, to recover "actual" damages for emotional distress under section 362(k), a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay. Lodge, 750 F.3d at 1271 (citing Dawson v. Washington Mutual Bank, F.A. (In re Dawson), 390 F.3d 1139, 1149 (9th Cir. 2004)).

Normally, the testimony of the plaintiff alone is not sufficient to establish significant emotional distress, and a plaintiff must provide corroborating evidence. In re Steed, 2021 WL 1186482, at *8 (Bankr. N.D. Ga. Mar. 26, 2021), aff'd sub nom. Steed v. GSRAN-Z, LLC, 2022 WL 1907593 (N.D. Ga. Apr. 22, 2022). As explained in In re Dawson, 390 F.3d 1139, 1149 (9th Cir. 2004), an individual may establish emotional distress damages in different ways: the debtor may offer corroborating medical evidence; non-experts (family members, friends, or coworkers) may testify to manifestations of anguish/emotional harm; and, in some cases, it may be readily apparent emotional distress damages are warranted if the conduct is particularly egregious or the

15

circumstances are such that a reasonable person would suffer significant emotional harm. See e.g., Wagner v. Ivory (In re Wagner), 74 B.R. 898, 905 (Bankr.E.D.Pa.1987) (creditor entered home at night and pretended to hold gun to debtor's head).

In Lodge, the court found the debtors failed to meet their burden to show emotional distress. The debtors offered only generalized evidence that they were "stressed out" and had difficulties interacting with one another and their children due to a foreclosure notice being published. Further, they only submitted their affidavits and failed to corroborate their injuries in any way. There was no evidence of egregious conduct, and there was nothing in the record that made it obvious the debtors had suffered significant emotional distress. The debtors also failed to establish a causal connection between their injuries (stress and physical maladies) and the violation of the stay (receiving a foreclosure notice). Accordingly, the court declined to grant the debtors damages for emotional distress. See also Best, 2018 WL 6060316 (finding the debtor failed to establish facts sufficient to give rise to emotional distress and declining to address the existence of a causal link between the stay violation and any alleged distress); Steed, 2021 WL 1186482 (debtor's testimony was generalized evidence of sadness and worry related to the loss of his tenant and the possibility that he would lose his home and did not support a finding of significant emotional distress under Lodge). In In re Harrison, 2019 WL 1267797 (Bankr. N.D. Fla Mar. 8, 2019), in contrast, the bankruptcy court found the debtor provided specific detail and met her burden to prove she was entitled to damages for emotional distress where the debtor testified and had the corroborating testimony of another witness that the creditor kept the debtor locked out, prevented her from receiving mail at her property, had its employee stalk her, and reported the property as "foreclosed," thus setting the stage for an after-dark confrontation with law enforcement.

16

**Punitive damages**

An award of punitive damages may be made under appropriate circumstances under section 362(k). Such appropriate circumstances arise where the creditor has acted with maliciousness or in bad faith. Castillo, 456 B.R. at 725. For an award of punitive damages, courts consider the following factors: (1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor. Roche, 361 B.R. at 624. Punitive damages are not warranted where the actions are wrong but not malicious. For example, in Holyfield, the court found the actions were not malicious where the nature and extent of the harm to the debtor was relatively de minimis. 2019 WL 2387045, at *8; see also Clayton v. King (In re Clayton), 235 B.R. 801, 811 (Bankr. M.D.N.C. 1998) ("Defendants actions reflect a lack of diligence, but not vindictiveness or malice. Under these circumstances, an award of punitive damages is not warranted."); Best, 2018 WL 6060316, at *6 (nature of  conduct was not sufficiently egregious to rise to the level of conduct to justify punitive damages, it was merely negligent).

**Calculation of Debtor's Damages**

Debtor seeks the return of the Property. That is not an option. As explained in the SJ Order, Debtor did not have an ownership interest in the Property when the First Bankruptcy Case was filed.

Debtor also seeks to recover $6,000 in rent paid to Najarian during the dispossessory proceedings. Courts have found a debtor is generally not entitled to a return of rent. Tavera, 645 B.R. at 311. Further, the evidence indicates that Debtor was ordered to pay rent to Najarian later in 2020 and 2021 after the dismissal of the First Bankruptcy Case. The rent was not directly related to Najarian's willful violation of the stay and is therefore not compensable.

Debtor seeks recovery of attorney's fees as actual damages incurred in responding to the dispossessory action and in filing and prosecuting this adversary proceeding. The Court finds that Debtor is entitled to the fees reasonably incurred in responding to the wrongfully served dispossessory action and some fees incurred in filing and prosecuting this adversary proceeding. But not all the fees incurred in connection with this adversary proceeding are attributable to Najarian's willful stay violation since the adversary proceeding addressed other issues regarding the scope of the automatic stay and whether the filing of the First Bankruptcy Case stayed the foreclosure sale itself.

Debtor's counsel stated he charges a rate of $250 per hour, which the Court finds to be imminently reasonable. Debtor's counsel spent four hours trying this case on March 28, 2023, for a total of $1,000 for which Debtor may recover damages. Mr. Holiday stated he initially received a $5,000 retainer to represent the Debtor in both dispossessory matters, $3,000 of which he estimates was spent responding to the dispossessory proceeding filed in December 2019 which is the subject of this Order and for which Debtor may recover damages.

Mr. Holiday also stated he spent 103 hours representing Debtor since 2019 in connection with the bankruptcy case and adversary proceeding in addition to the time to try this case. Examining the evidence presented by Debtor's counsel and the Court's extensive knowledge of the case and the many motions filed and determined (including the motion to dismiss and motion for summary judgment filed by Najarian), the Court finds about one third of the 103 hours spent on the adversary proceeding and bankruptcy case—equal to $9,000—is attributable to Najarian's willful stay violation. Accordingly, the Court finds Debtor is entitled to recover attorney's fees in the total amount of $13,000.

18

Debtor is not entitled to emotional distress damages. Debtor's testimony was generalized evidence of worry related to the possibility that he would lose his home and does not support a finding of significant emotional distress under Eleventh Circuit case law. He offered no specific examples of distress he experienced related to being served with the dispossessory complaint, rather than general anxiety about the fate of his home. While the Court does not doubt Debtor was sincere, it is just as likely Debtor's distress was caused as much by the alleged fraud that transpired before he filed bankruptcy. Further, Debtor offered no corroborating evidence and relied solely on his own testimony. Accordingly, the Court finds the generalized evidence does not support an award of emotional distress damages.

Debtor has not established he is entitled to punitive damages. The evidence does not support a finding Najarian acted vindictively or with malice. The nature of Najarian's conduct was not sufficiently egregious to rise to the level of conduct to justify punitive damages.

Accordingly, the Court finds an award of $13,000 for actual damages of attorney's fees is appropriate.

Conclusion

For the reasons stated on the record on March 28, 2023 and supplemented herein,

**IT IS ORDERED** that Najarian willfully violated the automatic stay of 11 U.S.C. § 362 when it caused a dispossessory complaint to be served on Debtor on January 2, 2020.

Debtor is entitled to judgment in his favor against Najarian for actual damages of attorney's fees in the total amount of $13,000.00.

**END OF DOCUMENT**

**Distribution List**

Wesley Kennedy, Jr.
4563 Carissa Court
Ellenwood, GA 30294

Donell Holiday
P. O. Box 4596
Atlanta, GA 30302

Kane St. John
Law Offices of Kane St. John
2164 Pawnee Drive
Marietta, GA 30067